UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| JOAN M. HEMBREE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 2:18-cv-00097 |
| THE OFFICE OF THE DISTRICT ATTORNEY GENERAL FOR THE 13TH JUDICIAL DISTRICT OF TENNESSEE, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The Office of the District Attorney General for the 13th Judicial District of Tennessee ("ODAG") and District Attorney General Bryant C. Dunaway seek summary judgment on Joan M. Hembree's sole remaining claim challenging the termination of her employment under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et. seq. The Motion has been fully briefed. (Doc. No. 45, 46, and 47.)

As a preliminary matter, Defendants have filed a Motion to Strike (Doc. No. 48) two exhibits relied upon by Plaintiff to oppose Defendants' motion for summary judgment: (1) Hembree's Letter to the Equal Employment Opportunity Commission ("EEOC"), (Doc. No. 45-3), and (2) the deposition of Terry Hembree, (Doc. No. 45-5). Defendants' objection that Plaintiff's EEOC letter is not authentic under Fed. R. Evid. 901 is resolved because Hembree avers that the letter was written by her, signed by her, and is based on her personal knowledge. (Doc. No. 50-2.) Plaintiff's letter is authenticated and admissible. Fed. R. Civ. P. 56(c)(2). Likewise, Defendants' motion to strike the deposition of Terry Hembree is without merit because having

worked as a criminal investigator in the ODAG, he has personal knowledge to support his testimony. Defendants' Motion to Strike will be denied.

## I. Material Undisputed Facts[1]

Since 2008, Hembree worked as a secretary at the ODAG. Her duties included greeting visitors, answering the telephone, processing mail, copying, and transmitting discovery to opposing counsel. (Doc. No. 46 ¶ 3.) In March 2017, her job duties expanded to include assisting in the preparation of grand jury cases and indictments. (Id. at ¶ 12.)

Hembree performed duties related to the grand jury from April through September 2017. (Id. at ¶ 23.) During that period, she admits that she made mistakes that required correction by assistant district attorney generals. For example, assistant district attorney generals Beth Willis, Bret Gunn, and Victor Gernt had complaints with Hembree's job performance, such as errors in drafting indictments, inaccurate information, not providing discovery to the opposing counsel, and not notifying officers to appear before the grand jury. (Id. ¶¶ 25, 20–33.) Plaintiff does not dispute that these complaints were made about her work. (Id. ¶¶ 30–33.) But, she believes that no grand jury session was missed or delayed due to her errors. (Id. ¶ 33.) Hembree consistently corrected the errors when they were brought to her attention, (Id. ¶¶ 32–33), and acknowledges that it was not the responsibility of the assistant district attorney generals to address her "repeated errors." (Id. ¶¶ 31–33.) Notwithstanding her errors, she complains that at no time prior to her termination did Dunaway give her any feedback on her performance or any complaints from others. (Doc. No. 42-1, Dep. of Hembree at 124, 197–99.) When Dunaway did check in on her, Hembree believed that she was doing good work. (Id. at 199; Doc. No. 46 ¶ 22.)

---

[1] Consistent with the standard under Fed. R. Civ. P. 56 these facts are presented in the light most favorable to Hembree.

During her employment she experienced the effects of neuropathy. (Doc. No. 46 ¶ 16.) Her symptoms consisted of difficulty walking, lack of balance, extreme headaches, blurry vision, muscle weakness, body tremors, tightness, and tingling and numbness in her limbs. (Dep. of Hembree at 16, 19–21.) While working she sometimes stumbled, kept her office lights dimmed, and had a disability placard on her car. (Doc. No. 46 ¶¶ 18–19.) She shared with co-workers her health issues, as well as her belief that she may have multiple sclerosis. (Id. ¶ 18.)

Hembree was hesitant to talk to Dunaway because she believed he was a bully. (Id.) But in January 2015 she talked to him about her "disability." (Id. ¶¶ 17– 18.) Hembree describes the one and only time she talked to Dunaway about her "disability" as follows:

> Q. Did you go to the DA in January 2015.
> **A. I did.**
> Q. Okay. And how did you approach him?
> **A. I asked if -- if I could speak to him.**
> Q. All right. And do you recall when this was?
> **A. No, I do not.**
> Q. But you think it was in January 2015?
> **A. It was after -- it was after the holiday break. I was hoping I would feel better.**
> Q. Okay. And what -- did he agree to speak with you?
> **A. Yes.**
> Q. All right. And what did -- where did the meeting take place?
> **A. In his office.**
> Q. And what did you talk about to him? What did you say to him?
> **A. I told him that I was having difficulty walking.**
> Q. Okay.
> **A. And that I was afraid he would think it was -- I -- I'm sorry, I lost that train of thought. . . . That's pretty much all that I can recall of that.**

(Dep. of Hembree at 38–39.)

Dunaway made the decision to end Hembree's employment because of poor job performance. (Doc. No. 42-3, Dep. of Dunaway at 73–75.) Hembree believes she was performing her job duties as expected and never received any job evaluation or feedback. (Dep. of Hembree

3

at 124, 197–99; Doc. No. 46 ¶¶ 22, 38.) When Dunaway made that decision, he denies having any knowledge that Hembree had a disability. (Doc. No. 46 ¶ 43.).

## II. Legal Standard

The Court will grant summary judgment to a moving party when "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Court "must ultimately decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Burgess v. Fischer, 735 F.3d 462, 471 (6th Cir. 2013) (quoting Anderson, 477 U.S. at 251–52). In doing so, the Court "draw[s] all reasonable inferences in the light most favorable to the non-moving party." Davis v. Gallagher, 951 F.3d 743, 747 (6th Cir. 2020) (citing Anderson, 477 U.S. at 251–52).

## III. Analysis

Without any direct evidence of intentional discrimination by Defendants, Plaintiff Hembree relies on the familiar indirect method applying the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework. This requires that Hembree first establish a *prima facie* case of discrimination, then the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008). If the defendant does so, the burden then shifts back to the plaintiff to "introduce evidence showing that the proffered explanation is pretextual." Ferrari v. Ford Motor Co., 826 F.3d 885, 892 (6th Cir. 2016) (internal quotations omitted).

4

The five elements a plaintiff must show to make out a *prima facie* case of disability discrimination under the ADA are that: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." Whitfield v. Tennessee, 639 F.3d 253, 259 (6th Cir. 2011). Here, it is not disputed that Hembree was disabled, suffered an adverse employment decision when she was terminated, and was replaced by another applicant. (Doc. Nos. 41 at 7, 9; 46 ¶ 38.)

Defendants argue that Hembree was not qualified because she "could not handle" the tasks asked of her in the secretary position and made many errors. (Doc. No. 41 at 10.) However, this relies upon the Defendants' proffered legitimate reason for terminating her employment. "[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the *prima facie* stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660–61 (6th Cir. 2000). This ensures that the *prima facie* stage remains distinct from the later stages of the burden-shifting when the defendant's non-discriminatory reason for the termination is considered. Id.; Cicero v. Borg-Warner Auto., Inc., 280 F.3d 579, 585 (6th Cir. 2002).

A reasonable jury could find that Hembree satisfied her burden of showing that she was qualified to perform the secretary position because Dunaway in fact appointed her to that position and assigned her job duties. (Doc. No. 46 ¶ 12.) Moreover, she held the secretary position for several years. (Id. ¶ 1.) This also shows she had the skills required of the position. The record

5

sufficiently proves that Hembree was qualified for purposes of her *prima facie* case on summary judgment.

However, the record does not permit a factual inference that Dunaway had knowledge of Hembree's disability. A disability under the ADA is defined as a physical or mental impairment that substantially limits major life activities; a person with a history or record of such impairment; or a person perceived by others as having such an impairment. 42 U.S.C. § 12102(1). Hembree asserts that she has an actual disability. (Doc. No. 17 ¶¶ 43, 54.) There are no arguments by her based on the alternative ways to establish a disability. At trial, the burden of proof and persuasion is on Hembree to establish that Dunaway had knowledge of her actual disability. Talley, 542 F.3d at 1105.

The record establishes that Dunaway denies any knowledge of Hembree's disability until after the termination decision. (Dep. of Dunaway at 66–68; Doc. No. 46 ¶ 43.) To prove that Dunaway had knowledge of her disability, Hembree offers that she spoke to Dunaway only once about her health. (Doc. No. 46 ¶ 17.) In January 2015, she told him that she was having "difficulty" walking. (Dep. of Hembree at 38–39.) Likewise, she told co-workers that she was "embarrassed about how she was stumbling and losing her balance" in the office. (Doc. No. 46 ¶ 18.) Even if true, trouble walking is not a disability but at best a lesser constraint on a major life activity. Penny v. United Parcel Serv., 128 F.3d 408, 415–16 (6th Cir. 1997) ("moderate difficulty or pain experienced while walking does not rise to the level of a disability" and is not "sufficient as a matter of law to establish a substantial limitation on the major life activity of walking"); Curtis v. Humana Military Healthcare Servs., Inc., 448 F. App'x 578, 581 (6th Cir. 2011) (finding no disability from moderate difficulty walking and trouble balancing due to neuropathy); 26 C.F.R. § 1630.2(j).

There is no evidence that Hembree ever told Dunaway that she had neuropathy, or that her problems walking was a symptom of neuropathy. Knowledge of an employee's impairment or symptom may put an employer on notice that the employee is disabled if the "symptoms are severe enough to alert [the employer], giving [the employer] either knowledge or some generalized notion of the disability." Yarberry v. Gregg Appliances, Inc., 625 F. App'x 729, 737 (6th Cir. 2015) (internal quotations omitted). But, the employer's "mere knowledge of a symptom is insufficient when there is no evidence that the [employer] also knew that the symptom was associated with a disabling condition." Fisher v. Trinova Corp., No. 96-3918, 1998 WL 774111, at *4 (6th Cir. Oct. 13, 1998); see Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 306 (6th Cir. 2016) (decisionmaker must be aware of the "specifics of an employee's disabilities or restrictions").

Hembree has presented evidence that Dunaway knew she had trouble walking. He may have also seen that she had a handicap placard on her car and sometimes dimmed the lights in her office. (Doc. No. 46 ¶ 18.) But that evidence does not inform him that she has a disability. With Dunaway "unaware that such a disability existed, it [is] impossible for [the termination] decision to have been based, even in part, on [Hembree's] disability." Raytheon Co. v. Hernandez, 540 U.S. 44, 55 n.7 (2003); see Tennial, 840 F.3d at 306 ("An employee cannot be subject to an adverse employment action based on [her] disability unless the individual decisionmaker responsible for [the adverse action] has knowledge of that disability.").

Hembree's reliance on evidence that her coworkers saw her lose balance around the office and that she told at least two co-workers that she may have multiple sclerosis, (Doc. No. 46 ¶ 18), does not help her prove that Dunaway had knowledge of her alleged disability. First, there is no proof that any co-worker said anything to Dunaway about Hembree's disability. Second, there is no proof that any co-worker in fact believed Hembree had a disability. Third, even if co-workers

7

made that inference, at best, it would be their perception of a disability that is not connected to her termination by Dunaway. Hembree has not shown any proof sufficient for a reasonable jury to find that Dunaway knew of her actual disability, or should have known, when he terminated her employment. On this basis alone the Court will grant Defendants' motion for summary judgment.

Even had Hembree established a *prima facie* case, her ADA claim would also fail because Defendants have offered a legitimate non-discriminatory reason for its decision to terminate her employment that she has not shown to be pretextual. Defendants have presented admissible evidence that Hembree's employment was terminated because of poor job performance. (Doc. No. 46 ¶¶ 38–40.) There is objective proof to support this reason from Plaintiff's admissions and the complaints about her work by several assistant district attorney generals. (Id. ¶¶ 23–25, 31–33, 40.) "Poor performance is a legitimate, nondiscriminatory reason for terminating a person's employment." Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 546 (6th Cir. 2008). The burden thus returns to the Plaintiff to "introduce evidence showing that [Defendants'] proffered explanation is pretextual." Ferrari, 826 F.3d at 895 (quoting Monette, 90 F.3d at 1186). A plaintiff can prove pretext if the legitimate non-discriminating reason: (1) has no basis in fact, (2) did not actually motivate the employer's action, or (3) is insufficient to motivate the employer's action. Id. Hembree relies upon the first and third ways to prove pretext.

Hembree's pretext argument singles out six of the reasons Dunaway cited as poor job performance because she believes there is no factual basis or that they are insufficient to justify termination. (Doc. No. 45 at 15–18.) She then ties them together to argue that Dunaway should have given her more training, more time to perform her job duties satisfactorily, and/or relieved her of other job duties so she could have performed as he expected. (Id. at 17–19.) Her arguments have several problems on this record. First, Hembree has admitted repeatedly that she in fact

8

"made some mistakes," (Doc. No. 46 ¶ 23), and that several assistant district attorney generals in fact "corrected some errors on the indictments" that she prepared. (Id. ¶¶ 25, 31–33). She acknowledges that her errors were corrected. (Id. ¶ 25.) There is other evidence of Hembree's typos and other work-related errors, too. (E.g., Doc. No. 42-5, Dep. of Willis at 13–14; Doc. No. 42-7, Depo. of Gernt at 11–14.) Second, she admits that there was at least one occasion that she did not properly notify officers to attend a grand jury session and at least one time that a grand jury file was missing. (Doc. No. 46 ¶¶ 26–27.) Third, she has disputed, with admissible evidence, whether her reading newspapers and Facebook during work hours was work related activity and whether she in fact had notice of a mandatory office meeting. This creates a disputed issue of fact, but it is materially insufficient to preclude summary judgment based on other evidence. Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Fourth, she offers her view, unadorned by citation to Dunaway, that his management style was deficient because she needed more time, resources, relief from other job duties, help from others, and not moving her office to perform as he expected. Yet, she identifies no similarly situated employee who received the benefits she demands or other accommodations to meet Dunaway's job expectations. See Tysinger v. Police Dep't of City of Zanesville, 463 F.3d 569, 573 (6th Cir. 2006) (evidence of comparable employees receiving more favorable treatment "may give rise to an inference that" discrimination "was the reason for the less favorable treatment"); Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003) (internal quotations omitted) (stating that the third way of showing pretext generally "consists of evidence that other employees . . . were not fired even though they engaged in substantially identical conduct").

Hembree's pretext argument is an invitation to the Court to act as a super-personnel department over Dunaway. This Court will decline that invitation consistent with the declination of other courts that have uniformly held that such is not the role of the Court. See George v. Youngstown State Univ., ___ F.3d ___, 2020 WL 4035164, at *11 (6th Cir. 2020) (quoting Lee v. City of Columbus, Ohio, 636 F.3d 245, 258 (6th Cir. 2011)) ("federal courts cannot 'act as super personnel departments'"); Bender v. Hecht's Dep't Stores, 455 F.3d 612, 627 (6th Cir. 2006) (holding that courts do not sit as a "'super personnel department,' overseeing and second guessing employers' business decisions"); Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 462 (6th Cir. 2004) (same); Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir. 2000) (same).

Having carefully reviewed Hembree's opposition to summary judgment based on the legal arguments and evidence presented, the Court simply finds no basis to infer that Dunaway's decision to terminate her on the standards he applied were rooted in invidious discrimination based on her alleged disability. Dunaway's termination was grounded in his honest belief, perhaps mistaken, but not discriminatory, that Hembree had not adequately performed her job. As the Sixth Circuit has stated, "as long as the employer honestly believed the reason it gave for its employment action, an employee is not able to establish pretext even if the employer's reason is ultimately found to be mistaken." Ferrari, 826 F.3d at 895. When an employer "reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" Chen v. Dow Chem. Co., 580 F.3d 394, 401 (6th Cir. 2009) (quoting Clay v. United Parcel Serv., Inc., 501 F.3d 695, 713–15 (6th Cir. 2007); In re Lewis, 845 F.2d 624, 633 (6th Cir. 1988) (to show that the business judgment was pretextual, the employee most show the judgment was "so ridden with error that defendant could not honestly have relied upon it"). Hembree's

disagreement with Defendants' honest business judgment regarding her work does not create sufficient evidence of pretext in the face of the substantial evidence that Defendants had a reasonable basis to be dissatisfied. <u>Majewski v. Automatic Data Processing, Inc.</u>, 274 F.3d 1106, 1116 (6th Cir. 2001). Summary judgment is required.

      An appropriate order will enter.

      _____
      WAVERLY D. CRENSHAW, JR.
      CHIEF UNITED STATES DISTRICT JUDGE

11

Case 2:18-cv-00097   Document 53   Filed 08/10/20   Page 11 of 11 PageID #: 645